IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFANY CURTIS, on behalf of herself and all persons similarly situated,<br><br>   Plaintiff,<br><br> v.<br><br>EXTRA SPACE STORAGE, INC., a Maryland corporation, EXTRA SPACE MANAGEMENT, INC., a Utah corporation, and DOES 1 through 100, inclusive,<br><br>   Defendants. | No. C 13-00319 WHA<br><br>**ORDER DENYING MOTION FOR CLASS CERTIFICATION** |

## INTRODUCTION

In this proposed class action involving the auctioning of goods by a self-storage facility, plaintiff moves for class certification. For the reasons stated below, the motion is **DENIED**.

## STATEMENT

Defendants Extra Space Storage, Inc. and Extra Space Management, Inc. own and manage self-service storage facilities in California. In July 2010, Plaintiff Tiffany Curtis signed a form rental agreement to rent a storage unit at the Extra Space facility in Orange County (Curtis. Decl. ¶ 2). Plaintiff was storing furniture, small appliances, silverware, bedding and many other household items with an estimated value of $4,805. Plaintiff failed to make a rental payment and Extra Space initiated a lien sale procedure (*id.* at ¶¶ 3–4).

On October 16, 2012, Extra Space mailed a preliminary lien notice to plaintiff. The notice stated that plaintiff owed $106 in unpaid rent and a $15 late fee for a total of $121. The notice stated that if plaintiff failed to pay, a lien would be placed on her property and her right to use the

1  storage space or access her property would be terminated. Plaintiff alleges that the notice was
2  defective because it misstated her actual rent — $97, not $106. Under one of plaintiff's theories
3  of liability, failure to state the precise amount owed in dollars is a violation of the California
4  Self-Service Storage Facility Act ("SSFA"). Business & Professions Code Section 21700, *et seq*.
5  This is the only violation alleged by plaintiff as to her lien notice.

   Plaintiff alleges that previous lien notices used by Extra Space, such as the ones mailed to potential class member John Mahoney in 2010, did not contain a statement that the occupant's right to use the storage facility would terminate on a specific date, as required by the SSFA. Instead, those notices simply referred to a deadline of "14 days from this notice," rather than the specific date on which termination would occur. Those earlier notices also failed to list the proper amount owed (Wilens Decl. ¶ 2).

   After plaintiff failed to pay the amount specified in the lien notice, defendant mailed a notice of lien and foreclosure to plaintiff on November 5, 2010. Again, this document inaccurately stated the amount due (Curtis Decl. ¶ 6). According to plaintiff, this violated Section 21705(b)(1)(B) of the California Business and Professions Code, which requires the notice of lien and foreclosure to state the current amount owed. In addition, the notice of lien and foreclosure stated that to avoid a lien sale, plaintiff had to pay the balance owed in cash or with a credit card or certified funds. Plaintiff alleges that this constitutes an unlawful restriction on the right to stop the foreclosure process by paying "the total sum due" by any lawful manner, *e.g*. by check. *Id*. at 21705(a).

   Plaintiff Curtis still did not pay the amount due and defendants published an advertisement or legal notice in the *Orange County Reporter*, which ran on December 10 and 17, 2012 (Wilens Dec. ¶ 8). There is no alleged violation regarding the requirement to publish a newspaper notice in regards to plaintiff Curtis, however, other potential class members suffered alleged violations regarding this requirement. For example, a named plaintiff who has already been dismissed from this action, Teresa Martinez, had her notice published in the *Torrance Daily Breeze*, which was located outside the judicial district in which the lien sale occurred. The same

violation occurred to potential class member Mahoney and potentially many others (Wilens Decl. ¶ 9).

On December 17, 2012, defendants conducted an auction to sell plaintiff's property. The inventory was sold for approximately $400 to the highest bidder (Wilens Decl. ¶ 10).

Plaintiff Curtis brings this putative class action against defendants, alleging violations of: (1) Section 21700 and 17200 of the California Business and Professions Code; (2) violations of California's Unfair Competition Law; and (3) of the Racketeer and Corrupt Organizations Act of 1970 (RICO) (Wilens Decl. ¶ 2). This order follows full briefing and oral argument.

## ANALYSIS

The dispositive issue is whether the class may be certified under FRCP 23(b)(3). A class can be certified under FRCP 23(b)(3) if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." This order need only address whether individual questions of fact take predominance.

**1. PREDOMINANCE.**

The predominance inquiry "focuses on the relationship between the common and individual issues." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Consequently, the presence of common issues of fact or law sufficient to satisfy the requirements of FRCP 23(a)(2) is not by itself sufficient to show that those common issues predominate. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (1998). Nonetheless, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Ibid*. (internal citation omitted). To establish predominance of common issues, a party seeking class certification is not required to show that the legal and factual issues raised by the claims of each class member are identical. Rather, the predominance inquiry focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representative." *Culinary/Bartender Trust Fund*, 244 F.3d at 1162. Among the considerations that are central to this inquiry is "the

3

notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001).

Although she herself did not suffer all of the alleged defects, plaintiff broadly would assert four violations of the California SSFA on behalf of a class: (1) notices did not state the precise and correct amount tenants must pay to avoid the lien or block the auction of the property; (2) notices did not state the exact date on which the lien goes into effect; (3) notices were not published in newspapers in the judicial district where the sale was conducted; and (4) notices prohibited payment of the balance by check (Reply Br. 8). Defendants make their primary stand against class certification arguing that plaintiff has not met her burden of demonstrating that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." FRCP 23(b)(3). Defendants raise five related arguments. *First*, defendants argue that their affirmative defenses of abandonment, waiver, failure to mitigate, consent, statute of limitations, and estoppel cannot be resolved on a class wide basis. *Second*, defendants argue that plaintiff's legal theories are not capable of class-wide resolution. *Third*, defendants argue that a class-wide harm cannot be established. *Fourth*, defendants argue that the differences in damages preclude class certification. *Fifth*, defendants argue that a class action is not the superior method for resolving this dispute (Opp. 13–25). For the purposes of this motion, this order need only reach arguments one and four.

### 2. AFFIRMATIVE DEFENSE OF ABANDONMENT.

Defendants argue that the affirmative defense of abandonment provides a complete defense to the claims for relief here, and creates individualized questions that predominate over common questions. "Abandonment is defined as the voluntary giving up of a thing by the owner because he no longer desires to possess it or to assert any right or dominion over it and is entirely indifferent as to what may become of it or as to who may thereafter posses it." *Martin v. Cassidy*, 149 Cal. App. 106, 110 (1957) (internal citation omitted). Abandonment of property requires both non-use and the intent to abandon. *Gerhard v. Stephens*, 68 Cal.2d 864, 889 (1968). Before an abandonment may be found, it is necessary to establish non-use accompanied by "unequivocal

4

1    and decisive acts" showing an intent to abandon. *Id*. at 890. "The owner's nonuse[] itself may
2    under some circumstances constitute such an act. Where nonuse[] is evidence of an abandonment
3    of a right, the question is one of intention, depending on the circumstances. . . ." *Id*. at 890–91
4    (internal citations omitted). Ultimately, "[a]bandonment is a question of intention, to be
5    determined only upon an investigation of all the facts and circumstances, and the trier of fact is
6    ordinarily the exclusive judge of the existence of the elements thereof, including the cardinal
7    element of intention." *Martin*, 149 Cal. App. 2d at 111. Where the defense of abandonment
8    raises predominant individual issues, denial of class certification is proper. *Gerhard*, 68 Cal.2d at
9    913.

10   Here, there is at least prima facie evidence suggesting abandonment. Plaintiff admits that
11   some class members: (1) failed to pay rent according to defendants' records; (2) were sent a
12   substantially similar preliminary lien notice; (3) each class member was sent a substantially
13   similar notice of lien; (4) a substantially similar newspaper notice was published regarding the
14   sale of each class member's property, some potentially in the wrong judicial district
15   (Curtis Br. 17). Defendants contend that, in addition to the requirements of the SSFA, they would
16   also "call [tenants], waiving late fees, making deals with them, and giving them multiple chances
17   to bring their accounts current" (James Decl. 6). Tenants also had the opportunity to block the
18   action by filling out the "Declaration of Opposition to Lien Sale." Finally, defendants maintain
19   that they had a policy and practice in place since February 2007, which permitted full access to
20   the storage units, upon request, to its California tenants during at least the first thirty-one days of
21   delinquency (*id*. at 7).

22   A tenant's inaction in the face of multiple warnings and failure to stop the action with a
23   simple declaration suggests abandonment. This suggestion, however, is not conclusive, and thus
24   the parties would have to explore the circumstances of each tenant to determine whether the
25   tenant intended to abandon his or her property. While some tenants may admit to abandonment,
26   others may deny it, but circumstantial evidence could be used to rebut such denials. Still others
27   may never have received the notices, phone calls, may not have seen the newspaper ads, or may
28   have other circumstances rebutting any suggestion of abandonment. In short, each class member

5

would require an individualized analysis as to his or her intent in allowing his or her property to be auctioned.

Plaintiff counters by noting that only a small percentage of tenants signed a form indicating intention to abandon his or her property — roughly three to five percent by the parties' estimates (Reply Br. 10) (plaintiff fails to properly cite where this information is located in the briefing). This logic is not persuasive. It is unlikely that a tenant intending to abandon his property would take the time to fill out a form and mail it back to defendants. Accordingly, in individual trials, defendants would be afforded an opportunity to demonstrate other circumstances demonstrating abandonment. For example, it is clear that at least some tenants realize that the material still left in storage is junk and purposefully leave it there for the landlord to dispose of rather than doing so themselves.

Plaintiff also claims that a tenant's failure to respond or failure to attempt to remove their property after being sent legal notices is not enough to constitute prima facie evidence of abandonment (*id.* at 11). Not so. A tenant's inaction in the face of multiple warnings and failure to stop the auction with a simple declaration is enough to suggest abandonment. As tenants fell further behind on their rental payments and the proportion of the value of their property sank in comparison to the rents owed, the presumption of abandonment would only increase. In circumstances such as these, where the value of property would vary greatly between class members, as would the rents owed, it is necessary to explore each tenant's intent in order to determine whether abandonment has occurred.

Defendants must be given the opportunity to argue abandonment on a case-by-case basis. Accordingly, individual issues predominate and class certification is **DENIED**.

**3. DAMAGES.**

In the alternative, defendants contend that the need for individualized damages determinations defeats plaintiffs' motion for class certification. In *Comcast*, the Supreme Court held that in order for Rule 23(b)(3)'s predominance requirement to be satisfied, a plaintiff must set forth a measurement method that can be applied class-wide and that ties the plaintiff's legal theory to the impact of the defendant's allegedly illegal conduct. *Comcast*, 133 S. Ct. at 1433.

6

1    The Supreme Court rejected the concept that "at the class-certification stage any method of
2    measurement is acceptable so long as it can be applied classwide" and required plaintiffs bringing
3    an antitrust suit to "tie each theory of antitrust impact to a calculation of damages." *Id*. at 1431.
4    Trial courts should not assume that if the legal liability theory is proven, that the "resulting
5    damages are capable of measurement and will not require labyrinthine individual calculations."
6    *Ibid*. (internal citations omitted).

7    Here, plaintiff argues that variations in the amount of damages do not necessarily preclude
8    class certification (Reply Br. 16). This order agrees. Plaintiff must still, however, offer a method
9    that tethers their theory of liability to a methodology for determining the damages suffered by the
10   class. Without such a theory, the proposed class cannot be certified as to damages, even if such a
11   class could be appropriately certified as to liability alone. In *Leyva*, for example, the court
12   distinguished *Comcast* in finding that damages could be readily calculated on a class-wide basis,
13   based on the defendant's own admissions in its notice of removal with respect to the plaintiffs'
14   wage and hour claims. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). The
15   court found that this evidence demonstrated that "damages could feasibly and efficiently be
16   calculated once the common liability questions are adjudicated." *Ibid*.

17   Here, plaintiff has not offered a workable method for tying the class-wide harm to a
18   specific method of calculating damages. For example, where the lien sale price is less than the
19   property's value, to determine the monetary loss, the trier of fact would need to determine the fair
20   market value of each item put up for lien sale and then compare it to the sale price. This would
21   depend on the value of each item, as well as the subjective value that tenants may have applied to
22   items with sentimental value.

23   Similarly, to determine other damages allegedly suffered by tenants, the trier of fact would
24   need to determine such things as the reasonable compensation for the time and money spent by
25   the tenant in attempting to recover her property and potentially even emotional distress suffered
26   by each tenant as a result of having their property taken. Similar to *Comcast*, plaintiff has not
27   identified a way to "isolate damages resulting from [a viable theory] from damages resulting from
28   nonviable theories." *Comcast*, 133 S. Ct. at 1431. There could possibly be a dispute between

each tenant and defendant as to the true value of each item auctioned. These sorts of determinations could not be made on a class-wide basis. Because plaintiff fails to demonstrate a reliable method to compute damages class-wide, this order finds that the motion for class certification must be **DENIED**.

### 4. Evidentiary Objections.

Defendants raise ten evidentiary objections in their response. Unlike evidence presented at a summary judgment stage, evidence presented in support of class certification need not be admissible at trial. *See Dominguez v. Schwarzenegger*, 270 F.R.D. 477, 483 n.5 (N.D. Cal. 2010) (Judge Claudia Wilken). Defendants' objections shall be considered in weighing the probative nature of the evidence. Objections 1–4 relate to tenant file inspections conducted by plaintiff's counsel. Defendants object to the summaries that plaintiff's counsel provides of these documents as lacking foundation, constituting hearsay and violating the best evidence rule. These objections are overruled, as plaintiff's attorney personally inspected the files, giving them foundation, and summarized them in accordance with FRE 1006. These files collected from tenants by defendants also fall within FRE 803(6), as records of a regularly conducted activity.

Defendants object to a second set of tenant files that were inspected by Laura Satterfield. Defendants object to the portions of Ms. Satterfield's declaration where she summarizes her findings. As with the prior objections, Ms. Satterfield's findings are based on the data input into spreadsheets and are similarly admissible under FRE 1006 and FRE 803(6).

Defendants object to plaintiff's counsel's declarations regarding the inspection of 2,000 newspaper notices obtained by subpoena from the Torrance Daily Breeze and his findings that 1,200 of them listed storage facilities outside the proper judicial district. This evidence is admissible under FRE 803(17), the exception for market reports and similar commercial publications, in addition to, FRE 1006, for summarized information.

Finally, defendants object to plaintiff's inclusion of the declaration of Jeffrey Wilens as attached to her reply brief. Defendants are correct in pointing out this Court's prior order stating that "reply declarations are disfavored" (Dkt. No. 14). Accordingly, any material in Mr. Wilens'

1  declaration that constitutes inadmissible legal opinion, conclusions or argument will not be
2  considered for the purposes of this motion.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for class certification is **DENIED**. Although a class has not been certified, this action shall proceed as to plaintiff's individual claims in accord with the deadlines previously set in the case management order.

**IT IS SO ORDERED.**

Dated: November 18, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE